**Chester J. REED et al., Appellants,**

v.

**TANGLEWILDE CIVIC CLUB, Appellee.**

No. 15218.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

June 20, 1968.

Rehearing Denied Sept. 5, 1968.

Donald H. Zwernemann, and Kamp, Laswell & Howard, Houston, for appellants.

Joe S. Powell, Houston, for appellee.

BELL, Chief Justice.

Appellee, an unincorporated association, recovered a joint and several judgment against Chester J. Reed and Jack J. Turk in the amount of $3,650.00. This amount represents the replacement cost of two pylons, or entrance markers, previously located on Tanglewilde Avenue near its intersection with Westheimer Road in the City of Houston, that had been removed and destroyed by appellants.

Tanglewilde Section 1 is a subdivision, the north line of which lies approximately 390 feet south of the south line of Westheimer Road. A plat of the subdivision was filed for record in the office of the County Clerk June 16, 1955. Tanglewilde Avenue, which is a street shown on said plat, runs from Westheimer Road through the approximate center of Tanglewilde, Section 1, to its south line. The northernmost lots in the subdivision begin approximately 390 feet south of the north end of Tanglewilde Avenue. On the east and west side of the avenue between Westheimer and the north line of the lots in Tanglewilde, Section 1, is unplatted acreage. The plat of Tanglewilde, Section 1, which dedicates the streets, alleys, easements and park to the public, shown thereon, shows the full length of Tanglewilde Avenue from its beginning at Westheimer to its south terminus at the south line of the subdivision. Undeniably the whole of Tanglewilde Avenue was dedicated as a street. It is 80 feet in width, though the evidence shows there was pavement of only 36 feet in width. The fee, subject to the easement for street purposes, remained in Robert V. King. The pylons, or entrance markers, were built for Mr. King or one of his corporations sometime in 1955 or 1956, after the plat was filed. The record is not clear as to the exact time. They were ornamental in nature. One of them was built west of the pavement and one was built on the east side. None of the lots in Tanglewilde bordered on the north 390 feet of the avenue, but only the unplatted acreage. The result is that the nearest lot in Tanglewilde to the ornamental entrance markers is about 300 feet, more or less, south from the markers.

Some years later Mr. Reed became the owner of some of the acreage on the west side of Tanglewilde and Mr. Turk became owner of a tract on the east. Both tracts bordered on Tanglewilde Avenue opposite the entrance markers. In 1964 Mr. Turk had the entrance marker on the east side removed. In 1965 Mr. Reed had the one on the west side removed.

A jury found that the pylons on both the east and west side of the paved portion of Tanglewilde Avenue were located *wholly within the 80 foot easement* constituting the dedicated avenue. The jury, in answer to Special Issue No. 5, found that the entrance markers were *not* given by the subdividers to Tanglewilde Civic Club. Then the damage issue, finding the replacement value of the pylons, was answered.

The trial court sustained appellee's motion to disregard the answer to Special Issue No. 5, on the ground that it was im-

material, and then rendered judgment for appellee.

Appellee brought suit in the name of an unincorporated association on its behalf and on behalf of the 560 families who were residents of Tanglewilde, Section 1. Its theory of recovery was that the pylons were dedicated to the owners of property in Tanglewilde, Section 1, and that the pylons had been given to the property owners in the subdivision many of whom were members of the Tanglewilde Civic Club. No issues were submitted to the jury on implied dedication. Apparently appellee's theory is that as a matter of law there was a dedication of the avenue not only to the public but particularly to owners of lots in the subdivision and that when the pylons became affixed to the land covered by the easement, they became a part thereof and were thus dedicated not only to the public but also, and particularly, to the owners of the lots.

Appellants take the position that appellee and the lot owners have no justiciable interest to sue for the value of the pylons as they had no interest different from other members of the public.

As above stated, it is not clear from the record as to just when the pylons were constructed. They were, however, constructed sometime after the dedication of the avenue. They were constructed by Mr. King or one of his corporations. They were maintained by Mr. King in the sense that he kept the grass around them cut and paid the electricity bill for the lighting until about 1959. At that time he told representatives of appellee that he would no longer do these things, and thereafter appellee maintained the area around the pylons and paid the electricity bill for the lighting. At some point, the exact time not being clear, appellee purchased the metal letters that were placed on the pylons on each side of the avenue that were used to spell the name "Tanglewilde".

We are of the view that under the facts of this case the appellee and those it pur-ported to represent had no special interest in the pylons which would permit them to maintain a suit to recover the replacement costs of the pylons. The jury found that the subdivider did not give the pylons to appellee. This was a material issue, because an affirmative answer would have given a special interest in appellee and the members of the Civic Club that they could protect. The court should not have disregarded the issue and rendered judgment for appellee. Tanglewilde Avenue was dedicated as a street to the public. It being so dedicated, it could not be closed to the detriment of appellee or its members. But we have no street closing case before us. We are of the view that the appellee and those for whom it sued, under the facts of this case, had no different right in the pylons than the public in general. Under such circumstances they had no justiciable interest to recover the damages awarded them. San Antonio Conservation Society et al. v. City of San Antonio, 250 S.W.2d 259 (Tex.Civ.App.), writ ref.; City of San Antonio v. Stumburg, 70 Tex. 366, 7 S.W. 754.

The judgment of the Trial Court is reversed and judgment is rendered that appellee and those for whom it sues take nothing.