No. 2491.

CITY OF SAN ANTONIO *v.* GEORGE R. STRUMBERG.

1. RIGHT OF ACTION.—No action lies to restrain an interference with a mere public right at the suit of one who has not suffered or who is threatened with some damage peculiar to himself or been threatened with it. When the injury inflicted (or threatened) is of a character which affects the public generally, and inflicts no special wrong on the individual, the suit must be brought by those who are intrusted with that duty by the Legislature. The rule was otherwise under the laws of Spain, but they were abrogated by the adoption of the common law in the Republic of Texas, and the remedy afforded by the laws of Spain to the individual in cities established before the revolution of 1836 did not so vest as to survive the change of laws when the common law was adopted. Even the laws of Spain did not confer the right on a private citizen to sue for damages done by the city itself, in erecting a structure and place dedicated to public use.

APPEAL from Bexar. Tried below before the Hon. George H. Noonan.

This case was submitted on agreed questions of law.

*Oscar Bergstrom*, for appellant: To authorize an individual to bring a suit to abate, or to enjoin the performance of acts which are or will become public nuisances, such individual must sustain special injury thereby, not common to the public, and must allege the facts showing such special injury, and then sustain them by proof. (Dillon on Municipal Corporations, 3 ed., sec. 661, and authorities cited in note; St. Louis v. O'Flynn, 119 Ill., 200; 59 Am. Rep., 795; High on Injunctions, 2 ed., secs. 589, 762, 1275; Ireland v. Seguin, 58 Texas, 183, and authorities there cited.)

Public squares in a city are not public highways, and unless dedicated for some special purpose, are subject to the control and disposition of the legislative body of such city as to them may seem best to subserve the interest of the public. (Dillon on Municipal Corporations, 3 ed., secs. 645, 646, and note.)

Property having been dedicated for a special public purpose or use, it can be applied to no other use, and when such special use is abandoned the property reverts to the owner of the fee,

which in the case of the public unappropriated lands within the limits of the city of San Antonio are vested in the city of San Antonio. (Lewis v. San Antonio, 7 Texas, 288.)

*L. N. Walthall*, for appellee: The right of way over the streets and plazas of cities and towns, and especially of such cities and towns as were established and built as was the city of San Antonio, is not limited to the owner or owners of lots immediately bounding on the streets and plazas, but extends to every citizen, and especially to every purchaser from the original proprietor, of lots in the same city or town. (Wyman v. Mayor of New York, 11 Wend., 487; Mayor of New Orleans v. Gravier, 5 Martin, La., 662 (11 O. S., 620); Partida 3, Tit. 32, Ley 3; Reco. Ll. 7, 8 and 9, Tit. 7, B. 7; Cincinnati v. White, 6 Pet., 431.)

Streets and plazas dedicated to the public is a perpetual dedication; neither any individual, nor the corporate authorities, nor the sovereign himself, can appropriate the grounds thus dedicated to any use other than that to which they were originally dedicated. (2 Dillon's Municipal Corporations, sec. 513, and the authorities there referred to.)

The fee of the land in the streets and plazas was never in the town or city as a corporation. (Hall's Mexican Law, p. 53, sec. 122.)

Gaines, Associate Justice. This suit was brought by appellee to enjoin appellant, the city of San Antonio, and also the county of Bexar, from erecting a public building upon the open space in the city which is known as the "Military Plaza." The trial court upon the hearing, granted a perpetual injunction and the city alone appeals.

The cause was tried upon an agreed statement of facts, from which it appears that the appellee is a property owner and a tax payer in the city, but that his property does not abut upon the plaza, and that he is not specially injured by the obstructions which were about to be placed thereon. It also appears that the military plaza is an open square, and is now and has for a time been beyond the memory of the oldest inhabitant, used as a market place for the sale and exchange of provisions and live stock and for the drilling of soldiers; that the ville of San Fernando (now San Antonio) was laid out and erected into a town as early as the year 1731, by a decree of the King of

Spain; that the military plaza was on the west side of a church then built or ordered to be built, and the main plaza was on the east side of said church—the two plazas being separated only by the ground on which the church was erected and the lots for the erection of a priest's house adjacent thereto; that about the year 1844, there remained on the north side of the military plaza a temporary structure for the quartering of troops, and about the year 1845 or 1846, a portion of such structure at the west end thereof was removed, so as to allow access to the plaza at the northwest corner; that there are in San Antonio citizens whose recollections extend back sixty or seventy years, and that they were told by old men then living, that said structure extended on the west and south sides of the plaza, thus completely inclosing it on three sides, and leaving the east side (towards the church) uninclosed. The statement of facts also shows that the city has more than ten thousand inhabitants, and has a special charter from the Legislature which empowers it to open, establish, extend, improve and abolish all streets and public places within the city, so far as it may lawfully be done; that its city council had regularly passed a resolution for the erection of a city hall on the military plaza, and that the city was about to carry such resolution into effect; and that a contract had been entered into between the city and the county of Bexar, by which the former was to lease to the latter a portion of the building which was to be erected for its court house and county offices. It also appeared that the use of the plaza for military purposes had long been discontinued, and that the city had for a long time permitted coffee stands thereon, from which provisions, vegetables, etc., were sold, and that for these licenses "rentals were paid" to the city.

It was objected in the court below, and is insisted here, that the plaintiff showed no such interest as authorized him to bring this suit, and if this ground be well taken the judgment must be reversed. We think it a principle established by the overwhelming weight of authority in the courts of all countries subject to the common law, that no action lies to restrain an interference with a mere public right, at the suit of an individual who has not suffered or is not threatened with some damage peculiar to himself. As applied to public measures the doctrine is elementary. (2 Cooley's Blackstone, 219.) For a special damage resulting from the invasion of a right enjoyed by a party in common with the public, the law affords him a

remedy by private action, but if the damages be only such as are common to all, the action must be brought by the lawfully constituted guardian or guardians of the public interest. The principle has been frequently applied in this court to another class of cases, and the right of an individual to sue without show-ing some special damage, either suffered or threatened, has been uniformly denied. (Walker v. Tarrant Co., 20 Texas, 16; Har-rell v. Lynch, 65 Texas, 146; Caruthers v. Harnett, 67 Texas, 127; Worsham v. Richards, 46 Texas, 441.) In Williams v. Davidson, 43 Texas, 1, and Shephard v. Barnett, 52 Texas, 638, the special damages were shown, and the right to maintain the action is placed expressly on this ground. (For a full discus-sion of the authorities see Wood on Nuisances, secs. 645 et seq.; see also Mami v. Graham, 8 Amer. and Eng. Corp. Cases, 401; Ward v. Little Rock, 41 Ark., 526; 1 High on Injunction, secs. 762, 763, and cases cited.) It has been intimated that the reason this rule was established was in order to prevent a multiplicity of suits, which might result if each individual were permitted to sue for damage resulting from a public nuisance which was common to all others; but we apprehend that the underlying principle is that individuals have a right to sue for a redress of their own private injuries, but for such as affect all the public alike he is not the representative of the public interest. "The Legislature of the State represents the public at large and has full and paramount authority over all public ways and public places." (2 Dillon's Mun. Corp., sec. 656.) A suit in such case must be brought by such officer or officers as have been in-trusted by the law making power with this duty.

It distinctly appears in this case that the plaintiff will not be specially injured by the obstructions about to be placed upon the plaza in question. We therefore conclude that he can not maintain this suit, unless it should be held that the laws of Spain under which the municipality was originally established, and the squares were dedicated to public use, gave this right to every inhabitant thereof, and that the right has descended to each inhabitant through the successive changes of government which have since taken place. Law 3 of title 32 of the Third Par-tida reads as follows: "If a man begin to erect a new edifice in the public places or streets, or common threshing grounds of any place, without permission of the King, or of the council upon whose ground he builds it, then any one of the inhabitants may forbid him to continue the work." * * (1 Moreau & Carl-

ton's Partidas, 432.) The manner by which this right is exercised is set forth in Law 1 of the same title. The first is by verbally declaring to the person who is erecting the structure, that he forbid it; the second, by throwing a stone against the work and making the same declaration; and the third is by a petition to the judge. These provisions, though applying more particularly to new works erected upon the land of another, may be presumed to apply also to erections upon public grounds. Laws 8 and 9 provide for a trial in the event that the person erecting the works, when forbidden, does not desist.

Now, it is contended in effect, that the right of each inhabitant in a municipality to forbid the erection of buildings upon public grounds, is a right so vested and inherent, that it continued operation after the change of government, and notwithstanding the adoption by the Republic of Texas of the common law, and that it can still be inforced at the suit of each individual resident of the city. But we do not so regard it. These provisions were purely remedial, and as such subject to alteration or repeal, and being, as shown, inconsistent with principles of procedure of common law and equity have been repealed by its adoption. But we think that the law quoted never applied to the erection of buildings by the municipality itself. The language shows that an inhabitant had no right to forbid a work which was being erected with "the permission of the king or council;" and therefore a private individual could not exercise this power when the edifice was being constructed by the direction either of the sovereign or the governing body of the municipality. This is also made manifest by Law 23 of the same title, which we quote: "No one ought to erect a house or other building or works in the public places  *  *  which are common to cities, towns or other places. For as they are left open for sake of regularity (apostura) and the common good of all who come there, no one ought to take possession of them or labor there for his own particular benefit, and if any one contravene this law, that which he builds there ought to be pulled down and destroyed, and if the corporation of the place where the works are constructed choose to retain them for their own use and not to pull them down they may do so, and they may make use of the revenue they derive therefrom in the same manner as of any other revenue they possess." (1 Mor. & Carl. Partidas, 447.) We think the conclusion is not to be resisted, that an inhabitant of a Spanish municipality, merely as such, had **no**

power under the laws which have been quoted to institute proceedings to prohibit the council from erecting buildings upon the public grounds.   It follows from these conclusions, that in our opinion the appellee was not entitled to bring and maintain this suit; and for this reason the judgment will be reversed and here rendered for the appellant, dissolving the injunction and dismissing the petition.    It is accordingly so ordered.

*Injunction dissolved and suit dimissed.*