FRIEDMAN, J.
 

 Appellants, the Sacramento County Board of Supervisors and its members, seek a writ of supersedeas pending their appeal from a preliminary injunction issued by the Sacramento Superior Court. The injunction was sought to enforce the Brown Act (Gov. Code, §§ 54950-
 
 54960),
 
 the objective of which is to prevent closed meetings of local legislative bodies.
 
 [1]
 
 The preliminary injunction restrains the board of supervisors and its committees from hold
 
 *49
 
 ing any closed meeting except under the statutory exceptions for personnel and national security matters. (See Gov. Code, § 54957.)
 

 Occasion for the injunction was a luncheon gathering at the Elks Club in Sacramento on February 8, 1967. Participants in the gathering were the five members of the board of supervisors, the county counsel, county executive, county director of welfare and several members of the Central Labor Council, AFL-CIO. At this gathering the subject of discussion was a strike of the Social Workers Union against the county and the county’s effort to enforce an injunction which it had secured in connection with the strike. Press representatives sought but were denied admission to the gathering. In their amended complaint the plaintiffs described not only the February 8 occurrence but alleged threatened future meetings of the supervisors, the county counsel and county executive with third persons selected by them.
 

 A reviewing court may in its discretion issue a supersedeas to stay the operation of a prohibitory decree pending appeal, if necessary or proper to the complete exercise of its appellate jurisdiction.
 
 (Food & Grocery Bureau
 
 v.
 
 Garfield,
 
 18 Cal.2d 174, 177 [114 P.2d 579].) Purpose of the writ is to maintain the subject of the action
 
 in statu quo
 
 until final determination of the appeal.
 
 (Dry Cleaners & Dyers Institute
 
 v.
 
 Reiss,
 
 5 Cal.2d 306, 310 [54 P.2d 470] ;
 
 Wilkman
 
 v.
 
 Banks,
 
 120 Cal.App. 521, 523 [261 P.2d 299].) Some California authorities call upon the applicant to show irreparable injury flowing from compliance with the injunction.
 
 (Dry Cleaners & Dyers Institute
 
 v.
 
 Reiss, supra,
 
 5 Cal.2d at p. 310; see
 
 Hulblert
 
 v.
 
 California etc. Cement Co.,
 
 161 Cal. 239, 246 [118 P. 928, 38 L.R.A. N.S. 436].) Later decisions declare that supersedeas is not based upon a balancing of conveniences or hardships but upon a consideration of the litigants’ respective rights; that it will not be granted at the risk of destroying rights which will belong to the respondent if the decree is affirmed.
 
 (Food & Grocery Bureau
 
 v.
 
 Garfield, supra,
 
 18 Cal.2d at p. 177;
 
 Clayton
 
 v.
 
 Schultz,
 
 12 Cal.2d 703, 708 [87 P.2d 355];
 
 Suburban Gas Service, Inc.
 
 v.
 
 Diggins,
 
 98 Cal.App.2d 767, 769 [220 P.2d 798].)
 

 . The county’s petition for supersedeas does not allege any injury, irreparable .or otherwise. Its petition seeks, protection of a ‘ • status quo ’ ’ consisting of nothing more than a practice of closed meetings between local legislative bodies and their
 
 *50
 
 attorneys to discuss pending litigation, a practice alleged to be statewide and resting upon an opinion of the State Attorney General dated October 4, 1960 (36 Ops. Cal. Atty Gen. 175). In its brief and in oral argument the county goes somewhat farther, declaring the existence of civil litigation in which the loss of all opportunity for private legal advice between the county counsel and the board of supervisors would deprive it of effective legal representation.
 

 More particularity in the county’s petition would have been desirable. Yet, we recognize public agencies’ constant embroilment in civil litigation, much of it highly adversary, involving large values and requiring public attorneys to pit themselves against vigorous and skilled private practitioners. Public agencies face the same hard realities as other civil litigants. An attorney who cannot confer with his client outside his opponent’s presence may be under insurmountable handicaps. A panoply of constitutional, statutory, administrative and fiscal arrangements covering state and local government expresses a policy that litigating public agencies strive with their legal adversaries on fairly even terms. We need not pause for citations to demonstrate the obvious. There is a public entitlement to the effective aid of legal counsel in civil litigation. Effective aid is impossible if opportunity for confidential legal advice is banned. California law, now expressed in sections 950 through 962 of the Evidence Code, protects confidential communications between attorney and client against forced disclosure. Several California decisions recognize that the attorney-client privilege is as vital to public as to private clients.
 
 (Holm
 
 v.
 
 Superior Court,
 
 42 Cal.2d 500, 506-508 [267 P.2d 1025, 268 P.2d 722];
 
 Jessup
 
 v.
 
 Superior Court,
 
 151 Cal.App.2d 102, 107-108 [311 P.2d 177].) Whether the Brown Act supersedes or amends by implication a privilege conferred by the Evidence Code may be a question of moment on this appeal. We do not foreshadow an answer here. The point on supersedeas is that the appellant county officials have a right of entitlement which competes for pendente lite protection with that claimed by the plaintiff Newspaper Guild.
 

 A provision of the Brown Act, section 54960, authorizes any “interested person” to seek legal restraint on violations or threatened violations. For present purposes the plaintiff Newspaper Guild appears to be an interested person. (Cf.
 
 Associated Boat Industries
 
 v.
 
 Marshall,
 
 104 Cal.App.2d 21 [230 P.2d 379].) Although its members have an understand
 
 *51
 
 able interest in access to news as saleable merchandise, the Newspaper Guild appears here as exponent of a California statutory policy against secrecy in local government:
 
 [2]
 
 Thus both the rights at balance in this supersedeas are “public.” The public interest in open government competes here with the public interest in sustaining itself in litigation.
 

 As we read its injunction complaint, the Newspaper Guild is not insisting on public attendance at sessions where confidential attorney-client communications occur. The trial court injunction is broader than the complaint. It bars the supervisors not only from meeting with selected third peri sons, but also from collective conferences with their attorney-under circumstances evoking the attorney-client privilege. The plaintiffs had come into court with a narrower claim of public injury, a claim that the county officials were meeting with a selected segment of the public and excluding the rest.
 
 [3]
 
 Aside from the ultimate result on appeal, a factor shaping this court’s discretionary supersedeas action is protection against the specific public injury made out by the complaint.
 

 So proportioned and balanced, the parties’ respective rights call for a limited supersedeas, one which would permit the supervisors to communicate with the county counsel under conditions in which the attorney-client privilege would obtain. In ordering this supersedeas, the court recognizes the possibility of abuse. A regulation such as the
 
 *52
 
 Brown Act may be evaded without much practical difficulty by anyone bent upon evasion. Early in this state’s history our Supreme Court wisely observed: “We must trust to the good faith and integrity of all the departments. Power must be placed somewhere, and confidence reposed in some one.”
 
 (Myers
 
 v.
 
 English,
 
 9 Cal. 341, 349.) The statutory policy announced in the Brown Act is not to be thwarted by closed sessions whose sole excuse is that a lawsuit exists. Pending this appeal the public rights claimed by the plaintiffs will suffer no permanent damage if the supervisors are permitted to confer with the county counsel under circumstances carefully calculated to comply with the Evidence Code provisions delineating the attorney-client privilege. Deprived of that permission, the county may suffer irretrievable losses in litigation.
 
 [4]
 

 Let a limited writ of supersedeas issue, permitting the board of supervisors and its members to confer with the county counsel under conditions in which the attorney-client privilege would obtain, but otherwise maintaining the effectiveness of the trial court decree pending this appeal.
 

 Pierce, P. J., and Began, J., concurred.
 

 [1]
 

 The central provision of the Brown Act is Government Code section 54953, which declares:
 

 “All meetings of the legislative body of a local agency shall be open and public, and all persons shall be permitted to attend any meeting of the legislative body of a local agency, except as otherwise provided in this chapter.”
 

 [2]
 

 Tke opening provision of the Brown Act (Gov. Code, § 54950) declares the public policy:
 

 “In enacting this chapter, the Legislature finds and declares public commissions, boards and councils and the other public agencies in this State exist to aid in the conduct of the people’s business. It is the intent of the law that their actions be taken openly and that their deliberations be conducted openly.
 

 ‘ ‘ The people of this State do not yield their sovereignty to the agencies which serve them. The people, in delegating authority, do not give their public servants the right to decide what is good for the people to know and what is not good for them to know. The people insist on remaining informed so that they may retain control over the instruments they have created. ’ ’
 

 [3]
 

 The amended complaint alleges that the Elks Club luncheon of February 8 was attended by labor union officials and barred to the press. The amended complaint alleges on information and belief that the luncheon participants “did not discuss matters that would affect the public adversely or that the disclosure of any of the discussion would be of [sic] adverse to the public interest . . . .” It alleges the threat of future meetings ‘1 between the Board of Supervisors and persons other than the Board of Supervisors and the County Counsel and County Executive . . . .”
 

 [4]
 

 A comparable balancing of public interests occurred in
 
 Jessup
 
 v.
 
 Superior Court, supra.
 
 There the public’s right to inspect public records was weighed against otherwise privileged accident reports in public files. The court stated: ‘ ‘ The necessity of [the reports] being held privileged until the possibility of litigation has ceased, or litigation which ensued has terminated, is more necessary to the public welfare than the matter of leaving them open for citizen inspection.” (151 Cal.App.2d at p. 107.)