The CITY OF ABILENE et
al., Appellants,

v.

Jerry SHACKELFORD et al., Appellees.

No. 5181.

Court of Civil Appeals of Texas,
Eastland.

Aug. 31, 1978.

Rehearing Denied Nov. 2, 1978.

David M. Wolpin, Asst. City Atty., Abilene, for appellants.

Michael S. Baskerville, McMahon, Smart, Wilson, Surovik & Suttle, Abilene, for appellees.

McCLOUD, Chief Justice.

At issue is the standing of members of the "news media" to challenge a closed meeting by an alleged governmental body, and the failure of such governmental body to produce public records of such closed meeting, allegedly in violation of charter provisions and statutory enactments.

Plaintiffs, Jerry Shackelford, Abilene Radio and Television Company d/b/a KRBC Television, and Reporter Publishing Company d/b/a Abilene Reporter News, sued defendants, The City of Abilene, The Council of the City of Abilene, Fred Lee Hughes, Joe H. Alcorta, Abe Allen, Pat Agnew, George Stowe, Emil Ogden and Kathy Webster, in their official capacities as members of the Council, the Equal Employment Opportunity Board of the City of Abilene, Van Boozer, Jorge Solis, Nelson Wilson, Jimmy McNeil and Cynthia McDaniel, in their offi-cial capacities as members of the Board, seeking a declaratory judgment and injunction, alleging that defendants violated Tex. Rev.Civ.Stat. arts. 6252-17 (Open Meetings Act) and 6252-17a (Open Records Act), and the Charter of the City.

The controversy arose as a result of an employment discrimination complaint filed by Wally Gutierrez, an employee of the City. Following a nonjury trial, based on stipulated facts, the trial court rendered judgment declaring, among other things, that pursuant to Section 122 of the City Charter all meetings of the Council of the City of Abilene and all boards or commissions appointed by the Council must be in all respects open to the public and that minutes of all such meetings must be kept and constitute public records; that the Equal Employment Opportunity Board, for the purposes of Section 122 of the City Charter, is a board appointed by the Council; that the Board met in closed session on November 30, 1977, contrary to and in violation of Section 122 of the City Charter; that the Board failed to keep, and to thereafter produce as public records, minutes of the closed meeting held on November 30, 1977, contrary to and in violation of Sections 122 and 123 of the City Charter and Article 6252-17a; and, that all actions taken and decisions reached by the Board during the closed meeting on November 30, 1977, are void. The court enjoined defendants from conducting any further closed meetings with respect to the employment discrimination complaint filed by Gutierrez; taking any vote or reaching any decision in any meeting not open to the public with respect to such complaint; ratifying any decision or vote previously reached in any closed meeting with respect to such complaint; and, implementing or attempting to implement any decision previously reached in any meeting closed to the public with respect to the employment discrimination complaint.

The stipulated facts reveal that on November 29, 1977, the Equal Employment Opportunity Board, which was created as a part of the Affirmative Action Plan of the

City of Abilene, held an open meeting attended by the "media" to consider the complaint of alleged employment discrimination filed by Gutierrez. Following the presentation of evidence and arguments, the Board, after being advised by the City Attorney and discussing the "Charter" and "Open Meetings Act", asked the complainant if he would consent to deliberation in private. He stated that would be fine. The Board deliberated approximately 15 minutes, then came back into open session and announced that it could not reach a decision. The next night, November 30, 1977, a second meeting of the Board was convened in open session. The "media" was also present at the meeting. The Board discussed possible conflicts between the Charter and the Open Meetings Act. The City Attorney advised the Board they could meet in private session pursuant to the Open Meetings Act. The Board members asked the complainant if he preferred an open or closed meeting. Gutierrez told the Board he would prefer that the Board meet privately. The City Attorney advised the Board that a formal public vote as set out in Section 2(1) of the Open Meetings Act would have to take place before the vote could be final. The Board and the complainant discussed when the Board's final report should be formally released. Gutierrez asked that he be given some time to examine the report before it was formally released to the media. The City Attorney stated the report must become public five days after it was decided upon, pursuant to the provisions of the Affirmative Action Plan of the City. Based upon the complainant's request, the Board agreed to delay five days before releasing the report, pursuant to the provisions of the Affirmative Action Plan. The Board returned into closed session and after deliberating for sometime, returned to open session and announced publicly that it had made a decision in closed session and would have its recommendation typed and return on December 5, 1977. The nature of the decision was not revealed. One of the Board members took notes during the closed session. The Board announced following its closed meeting on November 30 that it would have

a formal typed recommendation ready for presentation to the City Manager and the complainant on December 5, 1977, and pursuant to the provisions of the Affirmative Action Plan, the written decision would be made public five days after the December 5, 1977 date. Plaintiffs filed their original petition in the instant suit at approximately 5:05 p. m., and the Board, which met at 7:30 p. m. on December 5 did not take any further action with respect to the complaint or the Board's report thereon, because of a temporary restraining order issued by the court. The Chairman of the Board has since that date kept the Board's report in his custody and it has not been released. On the morning of December 5, 1977, prior to the filing of plaintiffs' suit later that afternoon, Jerry Shackelford, an investigative and reporting newsman employed by Abilene Radio and Television Company, presented a written request to the Chairman of the Board requesting the custodian to produce for inspection the minutes of the November 30 closed meeting. The requested information was not furnished to Shackelford. Due to the issuance of the trial court's temporary restraining order, and the court's subsequent modified restraining order, the Board has not revealed to any person the decision reached in the closed meeting on November 30, 1977, nor has the decision been in any way implemented or acted upon pursuant to such restraining order. The complaint filed by Gutierrez remains pending and awaiting final action by the Board.

The Charter of the City of Abilene provides:

"Section 122: All meetings of the Council and all Boards or Commissions appointed by the Council shall be open to the public. Minutes of all such meetings shall be kept and such minutes shall constitute public records."

"Section 123. All public records of every office, department or agency of the City shall be open to inspection by any citizen at all reasonable times, provided that such police records, vital statistics records, or any other records which are

closed to the public by law shall not be considered public records for the purpose of this Section."

Article 6252–17, the Open Meetings Act, provides in part:

"Sec. 2. (a) Except as otherwise provided in this Act or specifically permitted in the Constitution, every regular, special, or called meeting or session of every governmental body shall be open to the public; and no closed or executive meeting or session of any governmental body for any of the purposes for which closed or executive meetings or sessions are hereinafter authorized shall be held unless the governmental body has first been convened in open meeting or session for which notice has been given as hereinafter provided and during which open meeting or session the presiding officer has publicly announced that a closed or executive meeting or session will be held and identified the section or sections under this Act authorizing the holding of such closed or executive session.

.    .    .    .    .

(g) Nothing in this Act shall be construed to require governmental bodies to hold meetings open to the public in cases involving the appointment, employment, evaluation, reassignment, duties, discipline, or dismissal of a public officer or employee or to hear complaints or charges against such officer or employee, unless such officer or employee requests a public hearing.

.    .    .    .    .

(k) Nothing in this Act shall be construed to allow a closed meeting of a governing body where such closed meeting is prohibited, or where open meetings are required, by charter."

Article 6252–17a, the Open Records Act, provides in part:

"Sec. 3. (a) All information collected, assembled, or maintained by governmental bodies pursuant to law or ordinance or in connection with the transaction of official business is public information and available to the public during normal business hours of any governmental body, with the following exceptions only: .    ."

Plaintiffs contend that the Board, in holding the closed meeting on November 30, 1977, and in failing to keep and produce the minutes of the closed meeting, violated Sections 122 and 123 of the City Charter and Article 6252–17 (Open Meetings Act). We do not reach these issues. Plaintiffs also contend that the Board violated Article 6252–17a (Open Records Act). We disagree.

Defendants first argue that plaintiffs failed to allege facts showing that they had standing to seek injunctive or declaratory relief under Sections 122 and 123 of the City Charter or Article 6252–17 because they failed to allege they suffered a special or peculiar damage, not shared by the general public, as a result of the challenged closed meeting or the claimed failure to keep and produce minutes thereof. We agree.

Plaintiffs' petition clearly shows that a purely public right is at issue. They alleged that the "public and the news media have a constitutional right of access to the affairs of government and to information in the hands of governmental institutions relative to the affairs of such institutions," and defendants by their actions "have violated the constitutionally protected right of access to information of the public and the news media". They further alleged that defendants, having violated the City Charter, deprived "the public and the news media of due process of law  .  .  . and plaintiffs, as well as the public as a whole, have no other remedy at law" and would suffer irreparable injury if defendants were not restrained and enjoined from further violations of the constitutional, statutory and charter enactments in question.

The rule is well established that a plaintiff fails to establish a justiciable interest if as a private citizen, he asserts a public, as distinguished from a private, right and his petition fails to show that the matters in dispute affect him differently from other citizens. McDonald, Texas Civil

Practice, § 3.03.3. The rule was applied early in Texas in *City of San Antonio v. Stumburg,* 70 Tex. 366, 7 S.W. 754 (1888) wherein the court said:

> "We think it a principle established by the overwhelming weight of authority in the courts of all countries subject to the common law that no action lies to restrain an interference with a mere public right, at the suit of an individual who has not suffered or is not threatened with some damage peculiar to himself . ."

The rule was stated in *Yett v. Cook,* 115 Tex. 205, 281 S.W. 837 (1926) as follows:

> ". . . It is a rule of universal acceptation that to entitle any person to maintain an action in court it must be shown that he has a justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity . . . Whatever may be the rule in other jurisdictions, there can be no doubt that in Texas an action relating to elections or other matters of law enforcement, not involving questions of taxation or unlawful expenditure of public funds, cannot be maintained by a relator or plaintiff whose interest is only that of the public generally, in the absence of a valid statute authorizing the suit."

See also *Staples v. State,* 112 Tex. 61, 245 S.W. 639 (1922); *Scott v. Board of Adjustment,* 405 S.W.2d 55 (Tex.1966); *City of West Lake Hills v. State ex rel. City of Austin,* 466 S.W.2d 722 (Tex.1971); *Marshall v. City of Lubbock,* 520 S.W.2d 553 (Tex.Civ.App.—Amarillo 1975, no writ); *Tri County Citizens Rights Organization v. Johnson,* 498 S.W.2d 227 (Tex.Civ.App.—Austin 1973, ref'd n. r. e.); 59 Am.Jur.2d, Parties § 30 (2nd ed. 1971).

■ The cases relied upon by plaintiffs are distinguishable. They involve suits by taxpayers attacking void ordinances, or expenditure of public funds under void contracts. These exceptions to the general rule are well established and were recognized in *Yett v. Cook,* supra. The exceptions are not applicable to the instant case.

Plaintiffs failed to allege or prove they suffered a peculiar or special injury resulting from the closed meeting or failure to keep and produce minutes of such meeting. The City Charter does not designate the parties who have standing to challenge an alleged violation. The common law rule is applicable. Plaintiffs failed to allege or prove facts showing that they had standing to seek injunctive or declaratory relief based upon violations of Sections 122 and 123 of the City Charter.

■ Plaintiffs also argue that Section 3 of Article 6252–17 expressly grants them statutory standing. We disagree. Section 3 provides:

> "Any interested person may commence an action either by mandamus or injunction for the purpose of stopping or preventing violations or threatened violations of this Act by members of a governing body."

The court in *Scott v. Board of Adjustment,* 405 S.W.2d 55 (Tex.1966) held that the plaintiffs, three taxpayers, had statutory standing because the statute expressly provided that "any taxpayer" could bring suit. The court stated, however, that where the statute requires that the plaintiff be an "interested person," or the common law rule is applicable because there is no statute, plaintiff must show particular injury or damage, and he must allege and show how he has been injured or damaged other than as a member of the general public. The court said:

> "In most cases of this general nature, it has usually been required that the plaintiff be a 'person aggrieved' or a person whose interests are adversely affected, or a person having a special interest in the matter. This has been held to be true in the absence of statute. *City of San Antonio v. Stumburg,* 70 Tex. 366, 7 S.W. 754 (1888); *San Antonio Conservation Society v. City of San Antonio,* 250 S.W.2d 259 (Tex.Civ.App.1952, writ ref.). Many statutes give the right to review or to institute suit to 'persons aggrieved,' 'persons adversely affected,' 'any party in interest,' or any persons 'whose rights are

substantially affected.' Davis, Standing to Challenge Governmental Action, 39 Minn.L.Rev. 353 at 357 (1955); Jaffe, Standing to Secure Judicial Review: Public Actions, 74 Harv.L.Rev. 1265 (1961); Jaffe, Standing to Secure Judicial Review: Private Actions, 75 Harv.L.Rev. 255 (1961). Where the statute requires that the person be interested, affected, or aggrieved, or (in the absence of a statute) where the common law rule requiring the showing of particular injury or damage is controlling, the plaintiff must allege and show how he has been injured or damaged other than as a member of the general public in order to enjoin the actions of a governmental body. Such suits are essentially private in character and are for the protection of private rights."

Section 3 of Article 6252–17, which became effective May 23, 1967, expressly states that an "interested person" may commence an action. Prior to the enactment of Article 6252–17, our Supreme Court in *Scott*, supra, had said that when used in the type of statute now under consideration, the term "interested person" meant a person who alleged and proved that he had been injured or damaged other than as a member of the general public. It will be presumed that the Legislature in using the term "interested person" intended it to mean what the courts of this state had theretofore said it meant. *Smith v. Texas Co.*, 53 S.W.2d 774 (Tex.Comm.App.1932); *McBride v. Clayton*, 140 Tex. 71, 166 S.W.2d 125 (Tex.Comm. App.1942); *Texas Employers' Insurance Association v. Haunschild*, 527 S.W.2d 270 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.).

■ Plaintiffs argue that as members of the news media, charged with the public trust of disseminating the type of information expressly made public and accessible, they have standing to bring this action. We disagree. Plaintiffs, as representatives of the "news media", have no constitutional or other right of special access to information not available to the public generally. *Pell v. Procunier*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *Saxbe v. Washington Post Co.*, 417 U.S. 843, 94 S.Ct. 2811, 41 L.Ed.2d 514 (1974); *Houston Chronicle Publishing Company v. City of Houston*, 531 S.W.2d 177 (Tex.Civ.App.—Houston (14th Dist.) 1975), writ ref'd n. r. e. per curiam, 536 S.W.2d 559 (Tex.1976).

■ We hold that plaintiffs' pleadings and proof show that they have no standing to bring the action asserted under either Sections 122 and 123 of the City Charter or Article 6252–17, the Open Meetings Act.

■ Article 6252–17a, the Open Records Act, provides that "the person" requesting public information may seek a writ of mandamus, under certain circumstances, compelling the "governmental body" to make the information available for public inspection. Plaintiff, Jerry Shackelford, requested that the minutes of the closed meeting be made available for his inspection. Shackelford had standing to seek relief under the Open Records Act. The trial court declared in its judgment that the Board "failed to keep, and thereafter produce as public records, minutes of the closed meeting of said Board held on November 30, 1977, and that such failure was contrary to and in violation of Sections 122 and 123 of the Charter of the City of Abilene and of Article 6252–17a of the Revised Civil Statutes of the State of Texas." We have held that none of the plaintiffs, including Shackelford, had standing to contest the alleged violations of the City Charter. Assuming, without deciding, that the Board is a "governmental body" as defined in the Act, we nevertheless hold there has been no violation of Article 6252–17a which provides for "access by public to information in custody of governmental agencies and bodies". The trial court expressly found there were no "minutes of the closed meeting". The requested information was not in the custody of the Board. There was no violation of Article 6252–17a.

■ In Article 6252–17, the Open Meetings Act, the Legislature provided that only an "interested person" has standing to contest alleged violations of the Act. Article 6252–17a, the Open Records Act, which became effective June 14, 1973, is not so re-

strictive. It provides that the "person" requesting the information may contest alleged violations of the Act. *Industrial Foundation of the South, Inc. v. Texas Industrial Accident Board,* 540 S.W.2d 668 (Tex.1976); *Houston Chronicle Publishing Company v. City of Houston,* 531 S.W.2d 177 (Tex.Civ.App.—Houston (14th Dist.) 1975), writ ref'd n. r. e. per curiam, 536 S.W.2d 559 (Tex.1976). We assume that the Legislature intended that only an "interested person" should have the power to seek judicial invalidation of action allegedly taken in violation of the Open Meetings Act. *Lower Colorado River Authority v. City of San Marcos,* 523 S.W.2d 641 (Tex.1975). There is a significant difference between invalidation of public action and inspection of public records. If, however, the "interested person" restriction frustrates the objective of the Open Meetings Act, then it is a matter to be corrected by the Legislature. If the well established common law rule, discussed in *Scott v. Board of Adjustment,* supra, which requires, in the absence of statutory standing, a showing that the plaintiff has suffered a peculiar or special injury not shared by the general public, should be modified in a case of this nature, then the rule should be changed by our Supreme Court. We are bound by the existing statutes and Supreme Court decisions.

The judgment of the trial court declaring that the Board violated Article 6252–17a (Open Records Act) is reversed and rendered. The judgment in all other respects is reversed and the causes of action asserted by plaintiffs are dismissed.

BRADBURY, J., not participating.

## ON APPELLEES' MOTION FOR REHEARING

■ On September 22, 1978, the Beaumont Court of Civil Appeals in *Enterprise Company v. City of Beaumont et al.,* Docket No. 8231 (not yet reported) held that the Enterprise Company, publisher of two daily newspapers in the City of Beaumont, had "standing" to seek an injunction enjoining the City of Beaumont and The International Association of Firefighters, Local # 399 from engaging in labor collective bargaining negotiations in a closed meeting in violation of Section 7(e) of Article 5154c–1, Tex.Rev.Stat.Ann.[1] The evidence showed that one of plaintiff's reporters was denied access to a collective bargaining meeting. The City of Beaumont argued that plaintiff had no right to bring the action since it failed to show some special injury sustained by it which was not sustained by the public generally. The City cited the cases relied upon by us in our original opinion. Justice Keith stated that plaintiff had standing to maintain the suit under the rationale of *Houston Chronicle Publishing Co. v. City of Houston,* 531 S.W.2d 177 (Tex.Civ.App.— Houston (14th Dist.) 1975), writ ref'd n. r. e. per curiam, 536 S.W.2d 559 (Tex.1976), and noted parenthetically that the Supreme Court of Minnesota in *Channel 10, Inc. v. Independent School Dist. No. 709,* 298 Minn. 306, 215 N.W.2d 814, 821 (1974), held that a television station had standing to maintain a suit under the Minnesota Open Meeting Law, based in part upon "the right of the people to be informed in a practical way by the news media." We respectfully disagree with the reasoning of the Beaumont Court if applied to an alleged violation of the Texas Open Meetings Act. First, it should be noted that the Beaumont Court expressly limited its opinion to a violation of The Fire and Police Employee Relations Act. The court stated it was not necessary to consider the applicability of Article 6252– 17. We do not think that the authority relied upon by the Beaumont Court in any way changes the rule announced by us in our original opinion. The *Houston Chronicle* case was essentially concerned with the

1. Section 7(e) of The Fire and Police Employee Relations Act provides:

"(e) All deliberations pertaining to collective bargaining between an association and a public employer or any deliberation by a quorum of members of an association authorized to bargain collectively or by a member of a public employer authorized to bargain collectively shall be open to the public and in compliance with the Acts of the State of Texas."

applicability of Article 6252–17a, the Open Records Act. As pointed out in our original opinion, standing to complain of an alleged violation of that Act is granted to "the person" requesting public information and not limited to an "interested person." Furthermore, neither the Houston Court of Civil Appeals nor the Supreme Court discussed standing. In its per curiam opinion, the Supreme Court expressly stated that since the City of Houston filed no application for writ of error, the court reserved the question of whether the press and public have a "constitutional right" to obtain all of the information which the court of civil appeals held to be public information. The Minnesota Supreme Court in the *Channel 10* case noted:

> "(t)here is nothing in the statute in any way indicating that the object of the statute was to ensure that only persons with a particular injury or those having a special interest differing from that of the general public were to have any preferred status. . . ."

Again, we emphasize that the Texas Open Meetings Act in Section 3 limits standing to "interested persons."

Many states' open meeting laws do not restrict standing. Florida grants standing to any "citizens of this state." Fla.Stat. Ann. § 286.011 (1975). New Jersey grants standing to "any person, including a member of the public." N.J.Rev.Stat. § 10:4–16 (1976). Any "aggrieved person" may bring suit in New York. N.Y. Public Officers Law, art. 7 § 102 (Supp.1978). In Colorado, as in Minnesota, there is no statutory designation as to who has standing. Colo.Rev. Stat.Ann. § 29–9–101 (1976). See generally, Comment, Legislation: Oklahoma's Open Meeting Law, 29 Okl.L.Rev. 189 (1976); Comment, Invalidation as a Remedy For Open Meeting Law Violations, 55 Or.L. Rev. 519 (1976); Comment, The Iowa Open Meetings Act: A Lesson In Legislative Ineffectiveness, 62 Iowa L.Rev. 1108 (1977).

In California, the statute requiring open meetings provides that any "interested person" may commence an action. Cal.Codes Ann., Govt. Code § 54960 (1968). In *Sacra-*

*mento Newspaper Guild v. Sacramento County Bd. of Supervisors,* 263 Cal.App.2d 41, 69 Cal.Rptr. 480 (Cal.Ct. of App. 1968), the intermediate appellate court stated that the broad declaration, contained in the California statute, of the public's right to disclosure should logically extend standing to any county elector. See also *Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors,* 255 Cal.App.2d 51, 62 Cal. Rptr. 819 (1967). The court noted that the defendant did not question plaintiff's standing to sue, and had the issue been raised in the trial court, the complaint could have been easily amended to add appropriate parties and allegations. The court applied the California definition of "interested party" which is a "person having a direct, and not merely a consequential, interest in the litigation." *Associated Boat Industries v. Marshall,* 104 Cal.App.2d 21, 230 P.2d 379 (Cal.Dist.Ct. of App. 1951). The Texas definition of interested party is different. We do not consider the case persuasive.

The rationale of *Enterprise Company; Channel 10,* and *Sacramento Newspaper Guild* is that the statutes under consideration were obviously passed for the protection of the public; therefore, any member of the public should have standing to enforce such statutes. We find no defect in such logic. We encounter, however, great difficulty in applying such logically reached conclusion to the well established Texas rules regarding standing. In *City of San Antonio v. Stumburg,* 70 Tex. 366, 7 S.W. 754 (1888), the court pointed out that the real reason for the rule was not to prevent a multiplicity of suits, but when the injury affects, "all the public alike an individual is not the representative of the public interest." The court added, "A suit in such case must be brought by such officer or officers as have been intrusted by the lawmaking power with this duty." In *Yett v. Cook,* 115 Tex. 205, 281 S.W. 837 (1926), the court said, "However, the people of the city are not without remedy, for the reason that the state, the guardian and protector of all public rights, can maintain a mandamus suit for redress of the wrongs complained of, if any exist." Again in *San Antonio Conser-*

*vation Soc. v. City of San Antonio*, 250 S.W.2d 259 (Tex.Civ.App.—Austin 1952, writ ref'd), the court stated:

> "The reason that appellants have no justiciable interest in this controversy is that any right which they have to enjoy the charm and beauty of the San Antonio River and its banks within the City of San Antonio is a right shared in common with all the people of San Antonio and with the public in general and any impairment of this right is an injury or damage sustained by appellants in common with the general public. Only lawfully constituted guardians of the public interest may maintain actions for the redress of such character of injuries . . ."

The court in *Pierce v. Southern Pacific Company*, 410 S.W.2d 801 (Tex.Civ.App.— Waco 1967, writ ref'd) stated, "It is the nature of the wrong, injury or damage which controls and not the extent." After holding that the plaintiff's injury was shared in common with the public, the court said:

> "(a)n action such as this, under the circumstances alleged, may only 'be brought by the lawfully constituted guardian or guardians of the public interest.' *City of San Antonio v. Stumburg*, 70 Tex. 366, 7 S.W. 754. We cannot discard a settled rule merely because it dictates a result which may seem harsh to a single litigant."

The rule that a plaintiff must show that he has been injured or damaged other than as a member of the general public in order to have standing was approved by our Supreme Court in the recent case of *American Nazi Party v. Zindler*, 561 S.W.2d 247 (Tex. Civ.App.—Houston (14th Dist.)), writ ref'd n. r. e. per curiam, 568 S.W.2d 662 (Tex. 1978).

Plaintiffs have at no time asserted that they have a constitutional right of "access to the affairs of government" independent of and without regard to the charter and statutory provisions discussed in our original opinion. Their constitutional complaint is that because of their "unique status of public trust" they have "a constitutional right of access to the affairs and proceedings of government" and "therefore have standing to seek injunctive and declaratory relief based upon violations of Sections 122 and 123 of the Charter of the City of Abilene, Texas." We do not think that their constitutional argument enhances their "standing" status. Furthermore, it should be noted that in the recent case of *Houchins v. KQED, Inc.*, —— U.S. ——, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978), the United States Supreme Court stated:

> "*Branzburg v. Hayes*, supra, offers even less support for the respondents' position. Its observation, in dictum, that 'news gathering is not without its First Amendment protections,' 408 U.S. 665, at 707, 92 S.Ct. 2646, 33 L.Ed.2d 626, in no sense implied a constitutional right of access to news sources. . . ."

The court added:

> "(t)here is an undoubted right to gather news 'from any source by means within the law,' id., at 681–682, 92 S.Ct. 2646, 33 L.Ed.2d 626, but that affords no basis for the claim that the First Amendment compels others—private persons or governments—to supply information."

The court concluded:

> "Neither the First Amendment nor Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control. . . ."

See generally, Comment, Invalidation as a Remedy For Open Meeting Law Violations, 55 Or.L.Rev. 519 (1976); Note, Open Meeting Statutes: The Press Fights For the "Right to Know", 75 Harv.L.Rev. 1199 (1962).

The record reveals that in the instant case there are several persons who had standing to contest the matters in controversy had they elected to do so. As we understand the existing statutes, common law rules, and appropriate constitutional provisions, plaintiffs are not included within the group having standing to complain of the alleged closed meeting.

As stated in our original opinion, if the Texas rule regarding standing is to be changed, it should be changed by the Legislature or our Supreme Court.

We find nothing in the record to cause us to change the judgment heretofore entered. The motion for rehearing is overruled.

DICKENSON, J., not participating.