No. 2278.

HUGH BOLDING *v.* THE STATE.

1. AGGRAVATED ASSAULT—INDICTMENT.—By an unbroken line of decisions in the Supreme as well as this court it has been as it is now *held*, that a conviction for aggravated assault may be had under an indictment for assault with intent to murder, notwithstanding no circumstance of aggravation be alleged in the indictment.  (Hurt, J., dissents.)

2. ASSAULT—AUTHORITY OF SCHOOL TEACHERS.—The law confides to teachers a discretionary power to punish their pupils, and exonerates them from responsibility unless the punishment be excessive or malicious.  Moderate restraint and correction of a pupil by his teacher is not an offense, but is authorized by law; and it seems that the authority of a teacher is not limited to the time the pupil is at the school room or under the actual control of the teacher.

3. JURY LAW.—On the *voir dire* of a juror he said he had heard a person in whom he had confidence make a statement of the case, based not upon his own knowledge but on hearsay, and thereupon he, the juror, had formed a conclusion provided the statement was true, but had formed no conclusion as to whether or not it was true.  *Held,* not a disqualifying conclusion.

4. SAME.—The mere fact that the trial court erroneously overruled a good challenge for cause to an unqualified juror, and thereby necessitated the defense to expend a peremptory challenge on him, is not reversible error where it does not appear that any objectionable juror was forced upon the defendant.

APPEAL from the District Court of DeWitt. Tried below before the Hon. H. C. Pleasants.

The indictment charged that the appellant, on November 24, 1886, made an assault, with malice aforethought, upon Alex. Murphree, with the intention then and there to kill and murder him. The trial resulted in a conviction for aggravated assault, with the punishment assessed at a fine of twenty-five dollars and a month's imprisonment in the county jail.

Alex. Murphree, for the State, testified that he was a teacher in a public school in DeWitt county, and the defendant was one of his scholars. On Monday, November 22, 1886, witness gave to his arithmetic class, of which defendant was a member, two examples to work by the next morning. All the members of the class except the defendant had worked the examples or had worked at them, when the class was called the next morning. Defendant said he did not want to work the examples at home. Witness then told defendant to work two other examples and bring them to witness the next morning, and told him that if he did not comply he, witness, would whip him. After school opened the next morning, the witness asked the defendant if he had brought the examples. He replied that he had not, but would work them during school hours if witness would let him, but would not work them at home or at night, and gave no excuse why he would not do so. Witness then told defendant that he had required him to work the examples at night or at home, and that he would have to take the whipping. Witness sent Sterling White to get a quirt. White brought a very light quirt, and witness told him to bring a longer one, but he said there were none longer on any of the saddles. Witness then told White to bring a switch, and he brought a live oak switch about a yard long and as large at the butt as witness's little finger. The switch had some knots on it, and wishing to trim them off, witness asked for a knife, and defendant handed him his pocket knife. Witness trimmed the switch and handed the knife back to the defendant, who put it in his pocket. Witness then told defendant that it would be all right, and witness would not whip

him if he would promise to work the examples by the ensuing
Friday morning—the intervening Thursday being Thanksgiving
Day, on which there would be no school. Defendant replied
that he would not do it, and then the witness told him to stand
up. He stood up and witness struck him one lick with the
switch, whereupon the defendant reached to his left side, and
from the waist band of his pants drew an old butcher knife,
which had been ground down until it was about a third of an
inch wide, five or six inches long and sharp at the point. Wit-
ness grabbed defendant around the arms, intending to take the
butcher knife away from him; but failing to pinion his arms,
the defendant succeeded in stabbing witness under the left
shoulder blade, inflicting a serious wound, and also in slightly
cutting witness on the hip. Witness got the knife from the de-
fendant, who then ran out of the door. Witness attempted to
follow him, but fell before he reached the door. Witness got up
and tried to run after defendant, but fell again, and then de-
fendant told him he had tried to whip him for nothing, and that
he would hurt witness if he came out there worse than he
already had hurt him. Witness was confined to his bed for
several weeks on account of his wounds. He required of other
scholars what he had required of defendant. It was customary
with witness to require his scholars to do certain work at night,
and such was the custom in schools he had attended, but he
could not say it was a universal custom in schools.

Cross-examined, witness stated that defendant was enrolled
as of the age of thirteen years, and he presumed that was cor-
rect. Defendant had always been a good boy prior to the occa-
sion spoken of, and had never previously given witness any
trouble. Defendant offered no excuse whatever for not working
the examples.

Sterling White and George Lucas, pupils of the school, testi-
fying for the State, gave substantially the same account as Mur-
phree had of the circumstances prior to and at the time of the
collision between Murphree and the defendant. Lucas stated
further that, on the Monday before Wednesday on which the
cutting was done, he and defendant went for a bucket of water,
and the defendant, while they were gone, took the butcher knife
out of his boot and put it in the waistband of his pants.

Five other scholars testified substantially as Sterling White
had done, and the State closed.

R. G. Bolding, the father of defendant, testified that the latter

was thirteen years of age on May 15, 1886. Besides the defendant, witness had two younger children going to school to Murphree in November, 1886. Defendant walked and the others rode to the school, which was a mile and a half distant. After defendant returned from school, in the evening, he had to attend to the horse ridden by the children, and also had to get up the milch cows. In the morning and before school time, he had to get up the calves, and to saddle the horse for the children. Sometimes it was after supper time before he would get through with his work. Witness sent defendant to the school, and expected Mr. Murphree to control and teach him.

*Fly & Davidson*, for the appellant.

*Walter Weaver*, for the State.

WILLSON, JUDGE. An unbroken line of decisions in this State hold that under an indictment charging an assault with intent to murder, a conviction may be had for an aggravated assault, although no circumstance of aggravation is alleged in the indictment. In Davis v. The State, 20 Texas Court of Appeals, 302, we gave our views at length upon this question, citing the authorities in support of the same. We adhere to the opinion there expressed and so often announced in other cases, both by our Supreme Court and this court.

The law confides to teachers a discretionary power in the infliction of punishment upon their pupils, and will not hold them responsible unless the punishment inflicted be excessive, or be inflicted merely to gratify their own evil passions. Moderate restraint and correction by a teacher of a pupil is not an offense, but is authorized by the law. (Penal Code, art. 490; Dowlen v. The State, 14 Texas Ct. App., 61; Stanfield v. The State, 43 Texas, 167; 2 Bish. Crim. Law, secs. 880, 881, 886; 1 Whart. Crim. Law, sec. 632.)

Teachers have the right, the same as parents, to prescribe reasonable rules for the government of children under their charge, and to enforce, by moderate restraint and correction, obedience to such rules. This authority of a teacher over his pupils is not, in our opinion, necessarily limited to the time when the pupils are at the school room, or under the actual control of the teacher. Such authority extends, we think, to the prescribing and enforcement of reasonable rules and requirements even

while the pupils are at their homes. We find no material error in the charge of the court. We think it correctly and fully explains the law of the case, and there was no error in refusing the special instructions requested by the defendant.

As to the objection to the proposed juror, Burns, we are of the opinion that the court did not err in holding him to be competent. The character of the opinion which said Burns entertertained of the guilt or innocence of the defendant is not such as disqualifies. (Rothchilds v. The State, 7 Texas Ct. App., 519). Moreover it is not shown that any juror objectionable to the defendant was forced upon him. (Loggins v. The State, 12 Texas, Ct. App., 65.)

As to the teacher's testimony with reference to the custom of requiring pupils to study at other times than during school hours, we are of the opinion that it was immaterial, and, even if inadmissible, which we do not concede, it could not have affected the result, and was harmless to the defendant.

We find no error in this conviction, and the judgment is affirmed.

*Affirmed.*

Opinion delivered March 9, 1887.

Hurt, Judge, dissents from that portion of this opinion which holds that under an indictment for an assault to murder, in the usual form, a conviction may be had for an aggravated assault. He is of the opinion that the authorities in support of this doctrine are incorrect and should be overruled.