**REVERSE and RENDER; and Opinion Filed December 14, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00759-CV

**DALLAS INDEPENDENT SCHOOL DISTRICT AND MICHAEL L. WILLIAMS, COMMISSIONER OF EDUCATION, Appellants**
**V.**
**ADRIAN PETERS, Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-13-01850-I**

## MEMORANDUM OPINION

Before Justices Lang-Miers, Brown and Schenck
Opinion by Justice Schenck

This appeal stems from Dallas Independent School District's ("DISD") termination of Assistant Principal Adrian Peters' ("Mr. Peters") term contract pursuant to Chapter 21 of the Texas Education Code. The independent hearing examiner found good cause existed to terminate Mr. Peters' contract and recommended termination. The DISD Board Subcommittee ("School Board") adopted the recommendation of the independent hearing examiner and voted in a closed session meeting to terminate Mr. Peters' contract. Mr. Peters appealed the School Board's decision to the Commissioner of Education ("Commissioner") and he found good cause existed to terminate Mr. Peters' contract. Mr. Peters then sought judicial review of the Commissioner's decision. In doing so, he challenged the good cause finding and claimed the School Board violated the Texas Open Meetings Act ("Open Meetings Act") by voting to

terminate his contract in a closed session. The district court to which Mr. Peters' appeal was assigned, found that while the termination of Mr. Peters' contract for good cause is supported by substantial evidence, the School Board's vote to terminate Mr. Peters' contract is void because it occurred in a closed session in violation of the Open Meetings Act. The district court entered a final judgment reversing the Commissioner's decision and ordering DISD to reinstate Mr. Peters and pay him back pay and benefits. In addition, the district court conditionally awarded Mr. Peters attorney's fees and court costs under the Open Meetings Act.[1]

On appeal to this Court, DISD and the Commissioner argue the trial court erred in determining the School Board's decision is void. In addition, DISD argues the trial court erred by conditionally awarding Mr. Peters attorney's fees and costs. By cross appeal, Mr. Peters argues the trial court erred in determining his termination for good cause is supported by substantial evidence. For the following reasons, we reverse the trial court's judgment and render judgment for DISD and the Commissioner. Because the issues of law are well settled, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4.

### STATUTORY SCHEME TO CONTEST CONTRACT TERMINATION

To provide context for the factual and procedural background of this case, we briefly explain the statutory scheme available to Mr. Peters to contest the termination of his employment contract. After receiving notification of a proposed decision to terminate a contract, a teacher may request a hearing before an independent hearing examiner, assigned by the Commissioner of Education. *See* TEX. EDUC. CODE ANN. §§ 21.251–.254 (West 2012). This hearing is evidentiary and resembles a trial to the court. *See id.* §§ 21.255–.256. At the conclusion of the hearing, the hearing examiner issues a written recommendation that includes findings of fact and

---

[1] The Open Meetings Act permits an "interested person," who substantially prevails in an action to stop, prevent, or reverse a violation of the Open Meetings Act, to recover reasonable attorney's fees and costs. TEX. GOV'T CODE ANN. § 551.142(b) (West 2012).

conclusions of law and may include a proposal for granting relief.  *Id.* § 21.257.

The school district's board of trustees then considers the recommendation of the examiner and the record of the hearing and allows each party to present oral argument. *Id.* § 21.258.  The board must then announce a decision.  *Id.* § 21.259(a).

A party aggrieved by the board's decision may then appeal to the Commissioner of Education, who reviews the record of the examiner's hearing and the oral argument before the board, along with the parties' written argument and, in some instances, hears oral argument. *Id.* § 21.301(c).  The Commissioner may not substitute the Commissioner's judgment for that of the board unless the board's decision is arbitrary, capricious, or unlawful or not supported by substantial evidence.  *Id.* § 21.303(b)(1).  The Commissioner may not reverse a decision of a board of trustees based on a procedural irregularity or error by the board unless the Commissioner determines that the irregularity or error was likely to have led to an erroneous decision by the board.  *Id.* § 21.303(c).  The Commissioner issues a written decision that includes findings of fact and conclusions of law.  *Id.* § 21.304(a).

Either party may appeal the Commissioner's decision to a district court.  *Id.* § 21.307(a). The court shall review the evidence on the evidentiary record at the local level and may not take additional evidence.  *Id.* § 21.307(e).  The court may not reverse the decision of the Commissioner unless the decision is not supported by substantial evidence or unless the Commissioner's conclusions of law are erroneous.  *Id*. § 21.307(f).  The court may not reverse a decision of the Commissioner based on a procedural irregularity or error by a hearing examiner, a board of trustees or board subcommittee, or the Commissioner unless the court determines that the irregularity or error was likely to have led to an erroneous decision by the Commissioner.  *Id.* § 21.307(g).

–3–

**BACKGROUND CONCERNING MR. PETERS' TERMINATION**

DISD employed Mr. Peters as an Assistant Principal at H. Grady Spruce High School for the 2010–2011 and 2011–2012 school years under a term contract of employment. The decision to terminate Mr. Peters' contract culminated from three incidents that occurred in the fall of 2011. Two incidents involved female colleagues of Mr. Peters and one involved a 15-year-old female student ("S.M."), who was then approximately two months pregnant. The details surrounding all 3 incidents were explored at length over the course of a two-day hearing.[2]

**EVIDENCE PRESENTED TO THE HEARING EXAMINER**

Among the evidence presented to the Hearing Examiner was the following. On December 5, 2011, S.M., a 15-year-old freshman female, who was 4 feet 11 inches tall and weighed approximately 160 pounds, left the classroom without permission. Mr. Peters detained S.M. in the hallway, initially by holding her wrist. S.M. told Mr. Peters that she needed to go to the nurse. Mr. Peters did not ask her why; and instead, he ordered her to go back to the classroom and apologize to her teacher. Mr. Peters repeated this order two or three times. S.M. refused to return to the class and apologize. Mr. Peters began using a loud, aggressive, threatening, and unprofessional tone while talking to S.M. Mr. Peters grabbed S.M. by her arm and clothing multiple times, and she tried to get away from him and yelled for him to let her go and not to touch her. S.M. used profanities in her efforts to get away from Mr. Peters. During this encounter, Mr. Peters forcefully pinned S.M.'s arm behind her back two times and struggled with S.M., resulting in her head and body hitting against the lockers on the opposite sides of the hallway. Mr. Peters caused S.M.'s arm to hurt badly as he increased the pressure and position of

---

[2] The hearing was conducted by Phyllis Lister Brown, the independent hearing examiner ("Hearing Examiner"), who heard from 10 witnesses. Those witnesses are: Stephen Hill (S.M.'s math teacher whose class S.M. left without permission; S.M.; Dr. Cheryl Allen (school counselor); Angela Powell (business teacher); Elizabeth Pumpbelly (grant administrator/coordinator); Devon Toth (instructional coach English/language arts); Rawley Sanchez (Principal); Lisa Turek (Associate Principal); Monte Hodge (business education teacher); and Mr. Peters. Pertinent to the incident concerning S.M., is the testimony of Mr. Hill, S.M., Dr. Allen, Ms. Powell, Mr. Sanchez, Ms. Turek, Mr. Hodge, and Mr. Peters.

her arm farther and farther up her back. The positioning of S.M.'s arm behind her back was described as awkward—it looked like a chicken wing. The restraint used by Mr. Peters was not caused by S.M.'s body movements and was extremely aggressive. Mr. Peters refused to yield in his physical restraint—despite S.M. yelling out that she was pregnant and her numerous requests that she be let go. While attempting to restrain S.M., Mr. Peters told her, "If you don't stop, Little Girl, you're going to break your arm." Then Mr. Peters threatened to throw S.M. to the floor, to which S.M. replied that she was pregnant. Mr. Peters responded: "I don't care." At no time did S.M. threaten or act with any intent to hurt others, herself, or school property.

During the struggle, Dr. Allen, a school counselor, intervened after seeing Mr. Peters chase S.M. to the other side of the hall and pinning her face against the lockers while pressing her arm behind her. As S.M. yelled, "You're going to break my arm," the counselor became concerned for S.M.'s safety, and went to S.M., held her face, and asked her to stop yelling and calm down. S.M. calmed down; however, Mr. Peters continued to restrain S.M. and told her that if she didn't stop struggling, he was going to throw her to the floor.

Three teachers (Mr. Hill, Ms. Powell, and Mr. Hodge) and Dr. Allen, who observed the incident, were concerned for S.M's safety (her arm being broken and her pregnancy) and believed the restraint Mr. Peters used was inappropriate, unreasonable, and unnecessary.[3]

Mr. Peters testified that he tried to guide S.M. to an office by holding her elbow, that he responded to S.M.'s comment about her pregnancy by saying, "Then you need to stop and conduct yourself properly," and that he believed the restraint he used was reasonable.

Associate Principal Ms. Turek testified, from what she could see, she thought what Mr. Peters did was reasonable and she thought S.M. might hit Mr. Peters. Some of Ms. Turek's

---

[3] Mr. Hill testified Mr. Peters was bullying and unprofessional, and the force used was inappropriate; Dr. Allen testified that the force used was unnecessary and excessive; Ms. Powell testified that the force used was unreasonable and unnecessary; and Mr. Hodge testified that the type of restraint used was inappropriate.

testimony conflicted with her earlier statement to investigators. She also admitted that her attention was diverted to other students while this incident occurred.

### HEARING EXAMINER'S RECOMMENDATION

At the conclusion of the hearing, the Hearing Examiner made a written recommendation that included fifty-five findings of fact and twenty-one conclusions of law. Regarding the incident with S.M., the Hearing Examiner found that based upon the testimony and statements of S.M. and several witnesses, and the factors set forth in *Hogenson v. Williams*, the type and degree of physical restraint used by Mr. Peters was unnecessary, inappropriate and excessive. 542 S.W.2d 456 (Tex. Civ. App.—Texarkana 1976, no writ). In so finding, the Hearing Examiner stated that Mr. Peters' argument that he reasonably believed his actions in the use of physical restraint were necessary and thus privileged from disciplinary action was not credible and was not consistent with that of a person of ordinary prudence under the same or similar circumstances. The Hearing Examiner concluded that Mr. Peters physically and verbally abused S.M. She recommended that Mr. Peters' contract and employment with DISD be terminated.

### SCHOOL BOARD MEETING

The School Board then convened to consider the Hearing Examiner's recommendation. Mr. Peters participated at this meeting by and through his attorneys. At Mr. Peters' request, the meeting proceeded in a closed session. The School Board examined the Hearing Examiner's record and heard the arguments of the parties and their representatives. Following the arguments of the attorneys and questioning by the School Board, while still in a closed session, a board member made a motion to uphold the Hearing Examiner's recommendation and to terminate Mr. Peters' employment. In the presence of Mr. Peters' attorneys, the motion was seconded, and the School Board voted unanimously to terminate Mr. Peters' contract. While the vote should have

been made in an open session,[4] Mr. Peters did not complain to the School Board about proceeding in a closed session.

### COMMISSIONER'S DECISION

Mr. Peters appealed the School Board's decision to the Commissioner arguing that the School Board violated the Open Meetings Act when it voted to terminate his contract in a closed session. The Commissioner concluded he could not consider Mr. Peters' open meetings complaint because Mr. Peters failed to object to the closed session vote. The Commissioner then considered Mr. Peters' claim that good cause did not exist for his termination. The Commissioner adopted the findings of fact and conclusions of law of the Hearing Examiner in full. In his decision, the Commissioner discussed Mr. Peters' use of force and concluded Mr. Peters was not justified in using the level of force he did in restraining S.M. The Commissioner found there was good cause to terminate Mr. Peters' contract.

### DISTRICT COURT'S DECISION

Pursuant to section 21.307 of the education code, Mr. Peters sought judicial review of the Commissioner's decision. In doing so, Mr. Peters challenged the sufficiency of the evidence to support the termination of his contract for good cause and challenged the Commissioner's finding he lacked jurisdiction to consider Mr. Peters' Open Meetings Act complaint. In addition, Mr. Peters joined in his appeal an original declaratory judgments act claim, separate and apart from his appeal of the Commissioner's decision, as a citizen entitled to access to public information and meetings of governmental bodies, seeking to void the School Board's decision due to a violation of the Open Meetings Act.

---

[4] Section 26.007 of the education code requires that all public meetings comply with Chapter 551 of the government code. TEX. EDUC. CODE ANN. § 26.007. Chapter 551 is the Texas Open Meetings Act. Section 551.102 requires a vote on a matter deliberated in a closed meeting to be made in an open meeting. TEX. GOV'T CODE ANN. § 551.102.

The district court found the Commissioner's decision upholding DISD's termination of Mr. Peters' contract for good cause is supported by substantial evidence. The district court further found the Commissioner erred in concluding Mr. Peters waived his Open Meetings Act claim and found the School Board's decision is void. The district court did not consider whether the School Board's error in voting in a closed session was likely to have led to an erroneous decision. Consequently, the district court's conclusion that the School Board's decision is void, is premised on an Open Meetings Act violation that is tied solely to the vote having occurred in a closed session, rather than an error within the framework of the education code that would support a reversal of the Commissioner's decision upholding the School Board's decision.[5]

## DISCUSSION

On appeal, DISD raises four issues, three of which are interrelated and challenge the district court's determination that the termination vote is void, and one challenging the conditional award of attorney's fees and cost. The Commissioner, like DISD, challenges the district court's determination that the termination vote is void. Mr. Peters challenges the district court's determination that there is substantial evidence to support his termination for good cause.

### SUBSTANTIAL EVIDENCE TO SUPPORT TERMINATION FOR GOOD CAUSE

More particularly, Mr. Peters argues the district court erred in determining that there is substantial evidence to support his termination for good cause because his actions, as they respect S.M., are protected by the immunity provided by section 22.0512(a) of the Texas Education Code.

#### STANDARD OF REVIEW

A court to which a Commissioner's decision is appealed may not reverse his decision

---

[5] Section 21.303(c) of the education code only allows the Commissioner to reverse a decision of the School Board based on an error if the Commissioner determines that the error was likely to have led to an erroneous decision. TEX. EDUC. CODE ANN. § 21.303(c). Likewise, section 21.307(f) of the education code only allows the district court to reverse a decision of the Commissioner based on an error if the court determines that the error was likely to have led to an erroneous decision by the Commissioner. *Id.* § 21.307(f).

unless it is unsupported by substantial evidence. TEX. EDUC. CODE ANN. § 21.307(f). In determining whether the Commissioner's decision is supported by substantial evidence, the district court and this Court are to ascertain whether, based upon the evidence as a whole, reasonable minds could have reached the same conclusion as the Commissioner. *See Peaster Indep. Sch. Dist. v. Glodfelty*, 63 S.W.3d 1, 5 (Tex. App.—Fort Worth 2001, no pet.). The conclusion we review here is that Mr. Peters did not reasonably believe the level of force he used to restrain S.M. was necessary.

### DISCIPLINARY PROCEEDINGS AND PHYSICAL FORCE

On appeal, Mr. Peters claims his termination is not supported by substantial evidence because his conduct, as it respects S.M., is immune from discipline. Texas cases have long recognized the rule that public school teachers and others standing in loco parentis may use reasonable force to discipline their charges. *Balding v. State*, 4 S.W. 579 (1887). A public school teacher is immune from discipline for his or her use of physical force against a student to the extent justified under section 9.62 of the penal code. TEX. EDUC. CODE ANN. § 22.0512(a). Section 9.62 provides that the use of force, but not deadly force, against a person is justified: (1) if the actor is entrusted with the care, supervision, or administration of the person for a special purpose; and (2) when and to the degree the actor "reasonably believes" the force is necessary to further the special purpose or to maintain discipline in a group. TEX. PENAL CODE ANN. § 9.62 (West 2011) (emphasis added). Reasonable belief involves an objective—not subjective— standard defined as "a belief that would be held by an ordinary and prudent man in the same circumstances as the actor." TEX. PENAL CODE ANN. § 1.07(42). Moreover, while the acts of the teacher in using force must be viewed from the teacher's perspective, this does not mean that the

teacher's testimony must be believed[6] and it does not mean that if a teacher believed his actions were rational the school district must determine the teacher had a rational belief. *See Montgomery Indep. Sch. Dist. v. Davis,* 34 S.W.3d 559, 567 (Tex. 2000).

### APPLICATION OF THE REASONABLENESS STANDARD

In determining whether the force used by Mr. Peters was reasonable for the purpose of controlling, training and educating the child, or maintaining discipline in a group, the Commissioner examined the following *Hogenson* factors:

(1)   The age, sex, and condition of the child;

(2)   The nature of his offense or conduct and his motives;

(3)   The influence of the student's example upon other students;

(4)   Whether the force was reasonably necessary to compel obedience to a proper command; and

(5)   Whether the force was disproportionate to the offense, is unnecessarily degrading, or is likely to cause serious injury.

*Hogenson*, 542 S.W.2d at 459.   In doing so he noted the following.

> The child was a 15 year old girl who was two-months pregnant. She was 4 feet 11 inches and weighed 160 pounds.  The girl's first offense was leaving a classroom without permission.  When [Mr. Peters] confronted her in the hall, she refused to apologize for her actions and refused to follow [Mr. Peters'] instructions.  She cursed at [Mr. Peters].  She struggled as [Mr. Peters] attempted to keep her from walking away.  The child's actions set a bad example for other students.  Some force was necessary to compel the child's obedience to [Mr. Peters'] commands. The force which was significant and included twisting the child's arm behind her back use [sic] might not be disproportionate to the offense in some circumstances. However, in this case the force used risked harming both the girl and her unborn child.  The fact that the child was pregnant is of particular concern.  When during the incident [Mr. Peters] was informed of this fact, his response was, "I do not care."

---

[6] As we noted above, the Hearing Examiner found that Mr. Peters' argument that he reasonably believed his actions in the use of physical restraint were necessary and thus privileged from disciplinary action was not credible.

The Commissioner further noted that in addition to physical force, there were verbal components to the altercation, which are not privileged under section 22.0512 of the education code, even if the use of force is reasonable.

The Commissioner's decision is supported by the Hearing Examiner's findings of fact which he adopted in full. Among the findings of fact are the following.

On or about December 5, 2011, Peters used physical restraint on a 15 year old freshman student of Spruce. The student was approximately 2 months pregnant at the time of the incident. (finding of fact 29)

During the timeframe of December 2011, the female student was 4 feet and 11 inches tall and approximately 160 pounds. Peters was 5 feet and 11 inches tall and approximately 189 pounds. (finding of fact 30)

On that day, approximately the first 10 minutes of the first class on the date of the incident, the student requested for the teacher, Mr. Hill ("Hill"), to let her go to the bathroom multiple times, but the classroom teacher told her she could not go in accordance with policy. Hill testified the student seemed a little agitated. (finding of fact 31)

The student then got up and walked toward the door and Hill tried to block her from leaving, but she walked past him into the hallway. Mr. Hill did not attempt to restrain the student, but followed her into the hallway to make sure a hall monitor or someone saw her so that she would not be roaming the halls. (finding of fact 32)

When Hill looked [sic] entered the hallway, he saw Peters was detaining the student by holding her wrist. The student told Peters that she needed to go to the nurse. Peters did not inquire as to why the student needed to go to the nurse, but talked to the student about her need to go back and apologize to the teacher for leaving class. (finding of fact 33)

An argument between Peters and the student developed as the student continued to refuse Peters instructions. Witnesses reported Peters used a loud, aggressive, threatening and unprofessional tone while talking to the student. (finding of fact 35)

Peters then grabbed the student by her arm and clothing multiple times and she tried to get away from him and yelled for Peters to let her go and not touch her. The student used profanities in her efforts to get away from Peters. (finding of fact 36)

During the struggle between the student and Peters, Peters forcefully pinned student's arm behind her back two times, and struggled with her resulting in her

–11–

head and body hitting against the lockers on opposite sides of the hallway. (finding of fact 37)

Peters caused the student[']s arm to hurt "real bad" as he increased the pressure and position of her arm further and further up her back. The positioning of the student[']s arm behind her back was awkward, looked like a "chicken wing" and might have caused her arm to be broken. The restraint used by Peters[] was not the result of the student's body movements and was extremely aggressive. (finding of fact 38)

Peters refused to yield in his physical restraint despite the student yelling out that she was pregnant and her numerous requests that she be let go. While attempting to restrain the student, Peters told her that "If you don't stop, Little Girl, you're going to break your arm." (finding of fact 39)

Peters threatened to throw the student to the floor, to which the student replied that she was pregnant and continued to curse Peters. Peters responded to the student by stating *"I don't care."* (finding of fact 40)

During the struggle between Peters and the student, a school counselor intervened after seeing Peters chase the student to the other side of the hall and pinning her face against the lockers while pressing her arm behind her. As the student continued to yell "You're going to break my arm" the counselor became concerned for the student[']s safety and went to the student and grabbed her face and ask[ed] her to stop yelling and calm [down]. The Student calmed down; however Peters continued to restrain the student and told her that if she didn't stop struggling, he was going to throw her to the floor. (finding of fact 41)

Three teachers and a school counselor who observed the incident, including one trained in the use of physical restraint and Crisis Intervention Prevention, were concerned for the student's safety—the risk of her arm being broken, the threat to her stated pregnancy[—]and did not believe the restraint used under the circumstances was appropriate, reasonable or necessary. One counselor agreed that the student did not help the situation by struggling. (finding of fact 42)

The student never threatened or acted with intent to hurt others, herself or school property. (finding of fact 44)

The incident between Peters and the student lasted about 10 minutes in the hallway. Classrooms were disrupted and other students, parents and faculty witnessed the incident. (finding of fact 45)

The student's arm, head and body were sore or hurting the day after the incident, and the student's mother took her to the doctor to check on the health of the student and her unborn child. The student felt Peters' treatment of her placed her life and her child's life in danger. (finding of fact 46)

These findings of fact are supported by the evidence presented to the Hearing Examiner and address the *Hogenson* factors.[7]

Having reviewed the evidence, the Commissioner's findings of fact, and the Commissioner's decision, we find reasonable minds could have reached the same conclusion the Commissioner made concerning the level of force used by Mr. Peters. We conclude the district court properly discharged its review function in finding substantial evidence exists to support the termination of Mr. Peters' contract for good cause. We overrule Mr. Peters' sole issue.

## OPEN MEETINGS ACT

We now turn to DISD's and the Commissioner's issues challenging the district court's determination that the termination vote is void due to a violation of the Open Meetings Act. As we previously noted, Mr. Peters asserted an Open Meetings Act violation both as part of his appeal of the Commissioner's decision to the district court and as a separate original declaratory judgments action. First, we address Mr. Peters Open Meeting Act complaint in connection with his appeal of the Commissioner's decision.

### EDUCATION CODE CHALLENGE PREDICATED ON OPEN MEETINGS ACT VIOLATION

We recognize the district court's review of the Commissioner's decision on appeal is limited in scope and mirrors the standard applied to the Commissioner's review of the School Board's decision. Unlike a free-standing complaint under the Open Meetings Act, when an Open Meetings Act violation is asserted on appeal of the Commissioner's decision as the basis for reversal of the decision under the education code, our standard of review derives from the education code. More particularly, the district court may not reverse a decision of the Commissioner based on any procedural irregularity or error by the School Board, unless the

---

[7] Findings of fact numbers 29 and 30 relate to the first *Hogenson* factor. Findings of fact numbers 31 through 33 and 44 relate to the second *Hogenson* factor. Finding of fact number 44 relates to the third *Hogenson* factor. Findings of fact numbers 35 through 42 and 46 relate to the fourth *Hogenson* factor. Findings of fact number 35 through 42 and 45 and 46 related to the fifth *Hogenson* factor.

court determines that the irregularity or error was likely to have led to an erroneous decision by the Commissioner. TEX. EDUC. CODE ANN. § 21.307(g). No such a determination was made in this case, nor could it have been made.

The operative issue before the district court and this Court, acting in an appellate capacity, is whether a closed session vote likely led to an erroneous decision by the School Board. *See Id.* § 21.303(c). In considering this issue, we note that the meeting of the School Board to consider the Hearing Examiner's recommendation is not an evidentiary proceeding. Pursuant to section 21.258 of the education code, at the meeting, the School Board considers the Hearing Examiner's recommendation and allows each party to present an oral argument. As we previously stated, Mr. Peters attended and fully participated in the meeting through his attorneys. At his request, the meeting was held in a closed session. During the meeting, Mr. Peters' attorneys presented oral argument on his behalf. Mr. Peters' attorneys were present and observed the entire meeting, including the School Board's vote. There is no evidence or showing that the School Board's decision would have been any different, had it voted in an open session. Moreover, as we, the Hearing Examiner, the School Board, the Commissioner, and the district court have all determined, there is substantial evidence to support the termination decision. Therefore, the error in conducting the vote in a closed session did not lead to an erroneous decision by the Commissioner. Thus, Mr. Peters' appeal of the Commissioner's decision predicated upon the vote in closed session fails.[8]

---

[8] We recognize that, on some rare occasion, a violation of the Open Meetings Act might lead to an erroneous decision by the Commissioner.

–14–

**DECLARATORY JUDGMENTS ACTION PREDICATED ON OPEN MEETING ACT VIOLATION**

We next consider whether Mr. Peters' original declaratory judgments act claim, separate and apart from his appeal of the Commissioner's decision, supports the district court's determination that the School Board vote is void because it was held in a closed session.

**STANDING**

In doing so, we first consider whether Mr. Peters has standing to assert such a claim. We note that standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553 (Tex. 2000). Subject-matter jurisdiction is never presumed and cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993). Although none of the parties have specifically raised or briefed this jurisdictional issue, we are obliged to examine subject-matter jurisdiction because our jurisdiction over the merits of a case is no greater than that of the court from which the appeal is taken. *See OAIC Commercial Assets v. Stonegate Vill.*, 234 S.W.3d 726, 735 (Tex. App.—Dallas 2007, pet. denied).

The question of standing carries both constitutional and statutory implications. The "'irreducible constitutional minimum' of individual standing contains three elements: (1) the plaintiff must have an 'injury in fact'. . . (2) that is fairly traceable to the challenged action of the defendant . . . , and (3) it must be likely that the injury will be redressed by a favorable decision." *Save Our Springs Alliance v. City of Dripping Springs,* 304 S.W.3d 871, 878 (Tex. App.—Austin 2010) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992));[9] *accord Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012); *Brown v. Todd,* 53 S.W.3d 297, 305 (Tex. 2001) (quoting *Tex. Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504,

---

[9] As the *Save Our Springs* court observed, "we may look to similar federal standing requirements for guidance" *Id. (quoting Brown v. Todd,* 53 S.W.2d 297, 305 (Tex. 2001)).

517–18 (Tex. 1995)). As recognized by the Texas Supreme Court, constitutional standing stems from separation of powers principles and from the open courts provision, which provide court access only to a "person for an injury done him". TEX. CONST. art. I, § 13; *Texas Ass'n of Bus.*, 852 S.W.2d at 444.

Where the Plaintiff seeks to invoke rights created under a statute, he must show that he has been "injured or wronged within the parameters of the language used in the statute." *OAIC ,* 726 S.W.3d at 736. In construing a statute, we generally presume the Legislature acts with knowledge of general standing principles, *Garner v. Lumberton Indep. Sch. Dist.*, 430 S.W.2d 418, 423 (Tex. Civ. App.—Austin 1968, no writ), which include not only the requirement of actual injury within the contemplation of the legislation, but some "particularized interest . . . distinct from that sustained by the public at large." *South Texas Water Authority v. Lomas,* 223 S.W.3d 304, 307 (Tex. 2007). In addition, when construing a statute, we endeavor "to avoid constitutional problems when we can . . . ." *HEB Ministries, Inc. v. Texas Higher Educ. Coordinating Bd.*, 235 S.W.3d 627, 658 (Tex. 2007).

We note that on the one hand, a statute may make very specific demands of a governmental entity, but leave no citizen with a private right of action to bring a claim. *E.g., Scott v. Board of Adjustment,* 405 S.W.2d 55, 56 (Tex. 1966); *see also Cannon v. University of Chicago,* 441 U.S. 677, 688 (1979) ("the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person."). On the other hand, the Legislature may create an enforceable right and confer standing to the constitutional limits of the judiciary. In all events, the question of whether a statute authorizes some private right of action, and the scope of that right, is one of legislative intent.

**INJURY IN FACT UNDER THE OPEN MEETINGS ACT**

The Legislature passed the Open Meetings Act in 1967 to assure "that the public has the opportunity to be informed concerning the transactions of public business." Act of May 8, 1967, 60th Leg., ch. 271, R.S., § 7, 1967 Tex. Gen. Laws 597, 598 (current version at TEX. GOV'T CODE ANN. § 551.001, *et seq.*). To effectuate the policy of keeping government meetings open to the public, the Legislature has allowed any "interested person" to bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of the Open Meetings Act. TEX. GOV'T CODE ANN. § 551.142(a). Significantly, the Open Meetings Act confers a fairly finite right: to notice of a meeting and the right to attend. *Id.* §§ 551.002, 551.041. And as Mr. Peters notes, any actionable violation of the Open Meetings Act is ordinarily subject to the remedy of mandatory vacatur of the decision. *See City of Bells v. Greater Texoma Util. Auth.*, 890 S.W.2d 6, 10 (Tex. App.—Dallas 1990, writ denied).

As relevant here, the violation giving rise to the declaratory judgments proceeding is not a failure of notice or a debate of Mr. Peters' termination in private, which Mr. Peters himself demanded be done in a closed session, but rather the failure to actually conduct the vote on Mr. Peters' termination in public. Mr. Peters, the sole plaintiff here, undisputedly had notice and attended the meeting and was thus present for both the portion properly held in closed session (at his request), and the vote, which should have been held in an open session. The question here, then, is whether a member of the general public who both receives notice of the meeting and actually attends, as the act seeks to permit, has been "injured or wronged within the parameters of the language used in the statute" so as to qualify as an "interested person" entitled to bring suit. *See OAIC*, 726 S.W.3d at 736.

In considering standing under the Open Meetings Act, we begin by noting that there has been disagreement among appellate courts as to the principles of standing applicable to Open

–17–

Meetings Act violation claims. The majority of appellate courts have interpreted standing under the Open Meetings Act broadly to confer standing on any person who shares an injury in common with the public generally. *See Hays Cnty. Water Planning P'ship v. Hays Cnty. Tex.*, 41 S.W.3d 174, 177 (Tex. App.—Austin 2001, pet. denied) (citing *Cox Enters., Inc. v. Board of Trustees of the Austin Indep. Sch. Dist.,* 706 S.W.2d 956, 960 (Tex. 1986); *Save Our Springs Alliance, Inc. v. Lowry,* 934 S.W.2d 161, 162 (Tex. App.—Austin 1996, orig. proceeding); *City of Fort Worth v. Groves,* 746 S.W.2d 907, 912–13 (Tex. App.—Fort Worth 1988, no writ); *Cameron County Good Gov't League v. Ramon,* 619 S.W.2d 224, 230–31 (Tex. Civ. App.—Beaumont 1981, writ ref'd n.r.e.)). One appellate court has held that an "interested person" under the Open Meetings Act "must show particular injury or damage, and he must allege and show how he has been injured or damaged other than as a member of the general public." *City of Abilene v. Shackelford,* 572 S.W.2d 742, 746 (Tex. Civ. App.—Eastland 1978), *rev'd on other grounds,* 585 S.W.2d 665 (Tex. 1979).

*Groves* is illustrative of what is required under the broader, majority reading of standing under the Act. In that case, Mr. Groves, a resident and taxpayer of Tarrant County, sued Tarrant County, the Commissioner's Court and the City of Fort Worth seeking to invalidate a lease agreement between the County and the City, in part, due to a violation of the Open Meetings Act. More particularly, Mr. Groves claimed the agenda posted for a meeting of the Commissioners was inadequate to give him and other members of the public notice that the Commissioners would consider a proposal whereby the City would assume all operational responsibility of the Tarrant County Convention Center, for a period of thirty years. The court of appeals agreed with Mr. Groves and found Mr. Groves had been deprived of his opportunity to present his views concerning the proposed action to the Commissioners and to hear other views. *Id.* at 912. In doing so, the court noted that the notice required by the Open Meetings Act

is designed to afford the "public" the opportunity to attend such meetings to hear and be heard. *Id.* As Mr. Groves was, like everyone else, in fact deprived of the very protection the Open Meetings Act notice provision was established to protect, the court concluded Mr. Groves had sufficient public "standing" for the maintenance of his Open Meetings Act complaint. *Id.* at 913.

It is not for us to resolve the conflict among appellate courts concerning standing under the Open Meetings Act and we need not further expand it with our decision in this case. While the majority of the courts that have addressed this issue and interpreted the Open Meetings Act have clearly read standing under the Open Meetings Act broadly to confer "interested person" status (and thus standing), Mr. Peters' claim here goes much further. *See Groves*, 746 S.W.2d at 913. Indeed, what is distinct about Mr. Peters' claim here is that he, unlike the general public, did not suffer even a generalized injury within the contemplation of the Open Meetings Act as he had both notice of the meeting and the opportunity to observe the vote.

Therefore, Mr. Peters cannot establish public standing to assert a violation of the Open Meetings Act because he did not suffer the same injury the general public suffered in not having an opportunity to observe the vote. At best, Mr. Peters would be left to argue that he asserts his claim to rectify the Open Meetings Act injury of other members of the general public who, unlike him, were not present to observe the vote. We observe that such a reading of the Open Meetings Act would bring it into potential conflict with the "irreducible constitutional minimum" of a personal injury. In all events, we need not decide the issue here for two reasons. First, while the United States Supreme Court has recognized the possibility of third-party standing, that doctrine still requires a some personal injury on the part of the plaintiff as well as a showing of a "close relation" to the third party and a showing of some hindrance in the third-party's ability to protect his or her own interest. *Powers v. Ohio*, 499 U.S. 400, 411 (1991). Next, assuming

–19–

without deciding that Mr. Peters could establish any of this, he was undisputedly present when the claimed violation of the third-party rights occurred and sat silent until after it would have been possible to correct the error. *See Bowen v. Calallen Indep. Sch. Dist.*, 603 S.W.2d 229, 236 (Tex. Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.). Consequently, the Open Meetings Act does not confer standing upon Mr. Peters.

Because the error in voting in a closed session was not likely to have led to an erroneous decision by the School Board or the Commissioner, and because Mr. Peters lacks standing to assert a violation of the Open Meetings Act, separate and apart from his appeal of the Commissioner's decision, we sustain DISD's and the Commissioner's issues concerning the district court's determination that the School Board's vote is void.

**AWARD OF ATTORNEY'S FEES AND COSTS**

In its fourth issue, DISD argues the district court erred in conditionally awarding Mr. Peters attorney's fees and costs. The district court conditionally awarded Mr. Peters' attorney's fees and costs pursuant to section 551.142(b) of the Open Meetings Act. Because Mr. Peters lacks standing to pursue an Open Meetings Act claim, and thus could not prevail on same, this Court may reverse the award of attorney's fees and costs, and hereby does so. *See Kachina Pipeline Co., Inc. v. Lillis,* No. 13-0596, 2015 WL 3653272 at * 7 (Tex. June 12, 2015). We sustain DISD's fourth issue and reverse the district court's conditional award of attorney's fees and costs.

## CONCLUSION

We reverse the district court's judgment and render judgment in favor of DISD and the Commissioner.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

140759F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DALLAS INDEPENDENT SCHOOL
DISTRICT AND MICHAEL L.
WILLIAMS, COMMISSIONER OF
EDUCATION, Appellants

No. 05-14-00759-CV      V.

ADRIAN PETERS, Appellee

On Appeal from the 101st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-13-01850-I.
Opinion delivered by Justice Schenck.
Justices Lang-Miers and Brown
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that:

The Commissioner's decision concerning the termination of Mr. Peters' contract is upheld.

It is **ORDERED** that appellants DALLAS INDEPENDENT SCHOOL DISTRICT AND MICHAEL L. WILLIAMS, COMMISSIONER OF EDUCATION recover their costs of this appeal from appellee ADRIAN PETERS.

Judgment entered this 14th day of December, 2015.